Joseph L. RAND, Plaintiff,

v.

CF INDUSTRIES, INC. and Robert C. Liuzzi, Defendants.

No. 91 C 8079.

United States District Court, N.D. Illinois, E.D.

July 27, 1992.

William J. Holloway, Gerald Haberkorn, Hinshaw & Culbertson, Chicago, Ill., for plaintiff.

Michael White Coffield, Frank E. Pasquesi, Gwen V. Carroll, Coffield, Ungaretti and Harris, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff Joseph L. Rand, an attorney, filed this action against defendants CF Industries, Inc. ("CF Industries") and Robert C. Liuzzi, alleging violations of the Age Discrimination in Employment Act (ADEA) (Count I) and breach of contract (Counts II and III). Defendants have moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss plaintiff's complaint. For the reasons stated in this memorandum opinion and order, defendants' motion is denied as to Count I, is granted as to Count II, and is denied in part and granted in part as to Count III.

## FACTUAL BACKGROUND

In ruling on a motion to dismiss, the court must take the allegations of the complaint as true and view them in a light most favorable to the plaintiff. *See e.g., Tolmie v. United Parcel Service, Inc.,* 930 F.2d 579, 580 (7th Cir.1991). The facts as stated in plaintiff Rand's complaint are as follows.

Plaintiff Joseph L. Rand, an attorney, was hired by defendant CF Industries in November, 1988. (Complaint, Count I, ¶ 6.) During his tenure at CF Industries, Rand served as Assistant General Counsel and Assistant Secretary. (Count I, ¶ 10.) On December 7, 1990, defendant CF Industries dismissed Rand, who was 49 years old at the time. (Count I, ¶¶ 6, 8.) Rand was replaced by John J. Scott, then age 40. (Count I, ¶ 12.)

Plaintiff Rand alleges that he accepted employment at CF Industries in reliance upon assurances made to him by defendant Liuzzi, the corporation's Chief Executive Officer, and other CF Industries employees. According to the Complaint, Liuzzi assured Rand that plaintiff would be promoted to General Counsel after one or two years of employment as Assistant General Counsel. (Count II, ¶¶ 5-6.) Plaintiff claims that defendants breached contractual obligations by failing to fulfill these assurances.

The Complaint also alleges that defendant CF Industries issued to Rand a personnel handbook which outlined procedures for termination of employees and contained more general statements regarding employee relations. (Count III, 6-11.) According to Rand, the corporation's treatment of him did not comply with the policies set forth in the handbook. (Count III, ¶¶ 8, 10, 14, 16.) Rand claims that the failure of the company to follow the practices described in the handbook constitutes breach of contract.

## DISCUSSION

### I. ADEA CLAIM—COUNT I

██ Under Illinois law, a client may discharge his attorney at any time, with or without cause. *See Rhoades v. Norfolk & Western Railway Co.,* 78 Ill.2d 217, 227–228, 35 Ill.Dec. 680, 685, 399 N.E.2d 969, 974 (1979). The Illinois Supreme Court has further stated that this at-will discharge principle applies to in-house counsel, such as plaintiff Rand, as well as to attorneys who are not employees of their clients. *Balla v. Gambro, Inc.,* 145 Ill.2d 492, 503, 164 Ill.Dec. 892, 897, 584 N.E.2d 104, 109 (1991). Defendants contend that, as a result of the at-will discharge rule, they had absolute power to dismiss plaintiff Rand

for any reason and consequently cannot be held liable for age discrimination.

■ Defendants' argument is premised on the contention that a client's legal right to dismiss his or her attorney prevails over any other concern, including federal employment discrimination statutes. The court must disagree. The at-will discharge principle cited by defendants is a tenet of state law. *See Rhoades, supra,* 78 Ill.2d at 228, 35 Ill.Dec. at 685, 399 N.E.2d at 974. Consequently, under the Supremacy Clause of Article VI, cl. 2 of the Constitution, it must give way if it conflicts with a federal statute such as the ADEA. *See E.E.O C. v. Commonwealth of Massachusetts,* 858 F.2d 52, 53 (1st Cir.1988).

Because the ADEA predominates, the court cannot, as defendants urge, simply dismiss plaintiff's suit on the basis of the at-will discharge rule. Instead, the inquiry must focus on whether the federal statute encompasses a company's treatment of its in-house counsel and/or whether the ADEA incorporates the at-will discharge rule as an exception to its terms.

■ A court construing a federal statute must begin with the language of the statute itself. *See Orrego v. 833 West Buena Joint Venture,* 943 F.2d 730, 734 (7th Cir. 1991). The operative provision of the ADEA states:

It shall be unlawful for an employer- ... to discharge any individual ... because of such individual's age.

29 U.S.C. § 623(a)(1).

An "employer" is defined as:

... a person [including a corporation] engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year ...

29 U.S.C. § 630(b).

The term "employee" means:

... an individual employed by any employer ...

29 U.S.C. § 630(f).

■ The coverage of these provisions is broad, and they should be given a liberal interpretation in order to effectuate the purposes of the ADEA. *See Zimmerman v. North American Signal Co.,* 704 F.2d 347, 353 (7th Cir.1983). Defendants, however, have offered no argument as to how these statutory provisions should be construed to exclude the employer-employee relationship that exists between a corporation and member of its in-house legal staff. Defendant CF Industries is concededly an employer within the meaning of the statute and plaintiff Rand was its employee. The plain language of the statute therefore provides no basis for the conclusion that in-house attorney employees are not entitled to protection under the ADEA.

■ In addition to the language of the statute, aspects of the statutory framework militate against the conclusion that in-house counsel are excluded from the purview of the ADEA. Exclusions from statutory coverage do exist—e.g., for certain governmental officials or for certain "bona fide executives." See 29 U.S.C. §§ 630(f), 631(c)(1). Further, Congress delegated to the Equal Employment Opportunity Commission the power to "establish such reasonable exemptions to and from any or all provisions of this chapter as it may find necessary and proper in the public interest." 29 U.S.C. § 628. These provisions demonstrate that Congress did contemplate and act upon a perceived need for exempting certain types of employment relationships, such as the in-house attorney situation, from the coverage of the statute. Under these circumstances, the absence of an explicit exemption regarding in-house attorneys undercuts the contention that such an exception exists.

Additionally, a portion of the ADEA's legislative history supports the view that the statute's protections extend to in-house attorneys. In discussing the "bona fide executive" exemption of 29 U.S.C. § 631(c), the House Report accompanying the enactment of the exemption explained that the exemption extended to the "heads of major departments or divisions," such as "finance, marketing, *legal,* production and manufacturing" (emphasis added). See 1978 U.S.Code Congressional and Adminis-

trative News 504 at 531, H.R.Rept. No. 95–950 at p. 9. This language supports the inference that members of corporate legal staffs are covered by the Act. Otherwise, there would be no reason to include head legal department employee(s) in the bona fide executive exemption.

In arguing that a client's right to fire his or her attorney eclipses an in-house attorney's right to sue under the ADEA, defendants rely heavily on language in the Seventh Circuit case of *Kier v. Commercial Union Insurance Cos.*, 808 F.2d 1254 (7th Cir.1987). In *Kier*, a former in-house attorney brought an ADEA claim against his former employer. The Seventh Circuit, after assessing the evidence which had been presented at trial, affirmed the district court's grant of a judgment notwithstanding the verdict to the defendant. *Id.* at 1260.

Before addressing the arguments that had been raised on appeal, however, the Seventh Circuit noted that the defendant was plaintiff's client as well as his employer and stated:

> ... nothing in this opinion should be read to limit the clear right of a client to discharge his or her attorney for any reason, or for no reason. This principle reflects an understanding that the relationship between attorney and client is based on trust and cannot function unless the client has complete confidence in his or her attorney. However ... defendant ... did not press any objection ... [or] submit any memoranda of law in support of its assertion, presented for the first time below as a jury instruction, that an in-house attorney should be treated the same as a non-employee attorney for the purpose of discharge. More importantly, the defendant did not present this issue on appeal. Accordingly, we deem the argument waived.

808 F.2d at 1256–57.

Defendants assert that the Seventh Circuit's statements in *Kier* "clearly and unambiguously manifested its reasoning and intent regarding an in-house attorney's standing to raise an ADEA claim against his former client/employer." (Defendants' Reply Brief, pp. 3–4.) Defendants read *Kier* as providing a clear direction that in-house attorneys cannot bring ADEA claims.

The court disagrees. In *Kier*, the Seventh Circuit explicitly *declined* to address the issue of an in-house attorney's rights under the ADEA because the argument had been waived by defendants. Although the Seventh Circuit acknowledged the general principle enabling clients to discharge their attorneys, the court did not express any conclusion regarding how it would balance this interest with the remedial concerns of the ADEA. Moreover, the Seventh Circuit did not analyze the Supremacy Clause issues discussed in this opinion. Consequently, the language in *Kier* offers little, if any, guidance for this court as to the issues in this case.

Nor does the Illinois Supreme Court's decision in *Balla v. Gambro, Inc.*, 145 Ill.2d 492, 164 Ill.Dec. 892, 584 N.E.2d 104 (1991) compel a conclusion that plaintiff's ADEA claim is barred. In *Balla*, the Illinois Supreme Court held that an in-house attorney who had been dismissed for reporting his employer's wrongdoing could not bring an action for retaliatory discharge under Illinois law. *Balla*, however, concerned two competing state law principles; thus, it did not pose the Supremacy Clause questions presented here. Further, the decision in *Balla* focused on specific concerns about the impact of potential retaliatory discharge suits on attorney-client communications:

> We believe that if in-house counsel are granted the right to sue their employers for retaliatory discharge, employers might be less willing to be forthright and candid with their in-house counsel. Employers might be hesitant to turn to their in-house counsel for advice regarding potentially questionable corporate conduct knowing that their in-house counsel could use this information in a retaliatory discharge suit.

145 Ill.2d at 503, 164 Ill.Dec. at 897, 584 N.E.2d at 109.

The issues involved in an age discrimination action brought by a discharged mem-

ber of a corporate in-house legal staff are less likely to touch on matters sensitive to the attorney-client relationship than are issues arising in a retaliatory discharge suit brought by a similarly situated in-house lawyer. Consequently, the concerns underlying the Illinois Supreme Court's *Balla* decision are, to a large extent, inapplicable to this case.

In summary, the ADEA, as a federal statute, preempts defendants' rights under state law to discharge their in-house attorney/employees for any reason. Nothing in the ADEA or its legislative history indicates that in-house attorneys are to be excluded from the statute's protection, and neither Seventh Circuit nor Illinois caselaw mandates such a conclusion. As a result, plaintiff's ADEA claim will not be dismissed.

## II. BREACH OF CONTRACT—COUNTS II AND III

In contesting plaintiff's breach of contract claims, defendants renew their arguments based on a client's right to discharge an attorney for any reason or for no reason. Defendants contend that, because they possessed an absolute right to terminate Rand's employment, they could not have breached any contract by dismissing him. Because a common law breach of contract claim does not raise concerns relating to the preemptive force of a federal statute, defendants' contentions regarding the breach of contract counts have more merit than their arguments for dismissal of plaintiff's ADEA claim. Thus, fuller examination of the at-will discharge rule is warranted.

The primary Illinois Supreme Court case regarding clients' rights to dismiss their attorneys is *Rhoades v. Norfolk & Western Railway Co.*, 78 Ill.2d 217, 35 Ill.Dec. 680, 399 N.E.2d 969 (1979). In *Rhoades*, the Illinois Supreme Court ruled that an attorney who had been discharged by his client could not recover for damages possibly due him on the basis of a contingency fee contract, but rather was only entitled to be paid on a *quantum meruit* basis for the reasonable value of services rendered before dismissal. *Id.*, 78 Ill.2d at 230, 35 Ill.Dec. at 686, 399 N.E.2d at 975.

■ The Illinois Supreme Court premised its conclusion in *Rhoades* on the client's right to discharge his attorney for any reason, ascribing special value to this principle in light of the trust and confidence which must characterize the attorney-client relationship. *Id.*, 78 Ill.2d at 288, 35 Ill.Dec. at 685, 399 N.E.2d at 974. The Court reasoned that the client's right to discharge is a term of the attorney-client contract implied by law. *Id.*, 78 Ill.2d at 229–30, 35 Ill.Dec. at 686, 399 N.E.2d at 975. A client's exercise of the right to discharge is therefore not a breach and could not be penalized. *Id.*

■ As an implied term of the contract, defendants' right to discharge their attorney/employee remained part of their agreement with plaintiff Rand unless the right was expressly disavowed. *Cf. Foster Enterprises, Inc. v. Germania Federal Savings & Loan Assoc.*, 97 Ill.App.3d 22, 28, 52 Ill.Dec. 303, 306, 421 N.E.2d 1375, 1378 (3d Dist.1981) (implied covenant of good faith is part of contract unless expressly disavowed). Therefore, plaintiff's contract claim in Count II, which is based on the assurances allegedly given by defendant Liuzzi and other CF Industries employees, cannot survive unless the defendants' statements could be interpreted as an express disavowal of the right to discharge Rand at will.

In evaluating the question of whether the alleged assurances given by defendants could operate as a disclaimer of their right to discharge, the court takes note of principles of Illinois law regarding oral employment contracts. First, Illinois courts regard such contracts with skepticism. *See Tolmie v. United Parcel Service*, 930 F.2d 579, 581 (7th Cir.1991). In order to rebut the presumption of at-will employment, the oral offer of employment cannot be vague, but must encompass terms that are "clear and definite." *Id.*

In the attorney-client context, the client's right to discharge an attorney bears public policy implications which are absent in an ordinary employment relationship. Conse-

quently, the requirement that an employer's abrogation of its right to discharge be "clear and definite" is heightened. *Cf. La Rocco v. Bakwin*, 108 Ill.App.3d 723, 64 Ill.Dec. 286, 439 N.E.2d 537 (2d Dist.1982) (in light of at-will discharge rule, lawyer could not rely upon assurances of continued employment).

Given these considerations, the court concludes that the verbal assurances alleged by plaintiff are, as a matter of law, not clear or definite enough to operate as an express disavowal of defendants' right to discharge Rand as their attorney. Plaintiff does not allege that defendants explicitly promised him that he would not be dismissed, or that defendants expressly guaranteed him employment for a definite period of time.[1] In light of the importance accorded by the Illinois courts to a client's right to discharge a lawyer, these failures are fatal.[2] If clients are to abandon their rights to discharge an attorney, they must do so expressly. Plaintiff has not alleged such an express renunciation. His claim based on the alleged oral assurances (Count II) is consequently dismissed.

The dismissal of Count II leaves only plaintiff's Count III contract claim based on the employee handbook. Under Illinois law, statements made in an employee handbook can create contractual obligations if: 1) the language of the statements contains a promise clear enough that an employee would reasonably believe that an offer has been made; 2) the statement is disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; 3) the employee must accept the offer by commencing or continuing to work after learning of the policy statement. *See*

*Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 490, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987).

Plaintiff's handbook-based claims relate to two types of alleged statements. The first type are representations made regarding procedures for termination. (Count III, ¶¶ 7–10) Under the requirements of *Duldulao*, plaintiff Rand has adequately stated a claim based on these statements, since the alleged termination policies are clear enough to be possibly understood as an offer. Plaintiff Rand, however, has also rested his claim in Count III on statements regarding policies of "fairness," "sincerity," "courtesy" and "professionalism." (Count III, ¶ 11.) These statements are not definite enough to create contractual obligations. As a result, plaintiff's handbook claim, insofar as it based on statements regarding termination procedures, is sufficient to withstand a Rule 12(b)(6) motion. In other respects, however, the claim is dismissed.

Contrary to defendants' assertions, the client's right to discharge an attorney does not mandate dismissal of all claims based on the handbook. First, the handbook is comprised of written statements and therefore does not present the problems of proof raised by vague oral assurances. Secondly, the language relied upon by plaintiff does not abrogate or substantively limit the client's right to discharge his attorney, it only suggests a set procedure by which the dismissal can be accomplished. The at-will discharge rule is therefore not directly implicated.

## CONCLUSION

For the reasons stated in this memorandum opinion and order, defendants' motion

---

**1.** Defendants' alleged promise that plaintiff would become general counsel within "one or two years" is not tantamount to a promise of a definite term of employment or an express assurance that plaintiff would not be dismissed. First, the flexible characterization of the time period involved attests to the indefiniteness of the alleged promise. Secondly, given that defendants possessed, and never explicitly disavowed, an implied right to terminate plaintiff at any time, the promise of promotion to general counsel is best understood as being conditioned on the non-exercise of the discharge right.

**2.** Plaintiff suggests that determination of whether an oral assurance is clear or definite enough to give rise to a contract should not be undertaken on a Rule 12(b)(6) motion to dismiss. In *Tolmie v. United Parcel Service*, 930 F.2d 579, 583 (7th Cir.1991), however, the Seventh Circuit affirmed a district court's 12(b)(6) dismissal on these grounds.

to dismiss is DENIED as to Count I, GRANTED as to Count II, and GRANTED in part and DENIED in part as to Count III. Parties are urged to discuss settlement of this case and are to report for status on August 4, 1992 at 10 a.m.