**Paul A. STINNEFORD, Plaintiffs,**

**v.**

**SPIEGEL INC. and Otto Versand, a Limited Partnership, Defendants.**

**No. 90 C 2148.**

United States District Court, N.D. Illinois, E.D.

Feb. 15, 1994.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Before the Court is Defendants' Motion for Summary Judgement.

## FACTS

Defendant Spiegel Inc. ("Defendant") hired Plaintiff Paul Stinneford ("Plaintiff") as Assistant Vice President and Associate General Counsel on September 18, 1972. On January 1, 1978, Defendant promoted Plaintiff to the position of Vice President Secretary and General Counsel which Plaintiff held until his termination on April 15, 1988.

Defendant submits affidavits from seven of its top corporate officers and various deposition excerpts all of which suggest that Plaintiff gradually lost the respect, trust and confidence of the Defendant's top corporate officers. The affidavits state that the officers found Plaintiff confrontational, argumentative and non-responsive to their need for prompt legal advice. On at least three occasions, Defendant's top corporate officers requested that the Defendant's CEO remove Plaintiff from a particular deal since Plaintiff was allegedly hindering rather than helping the transaction. Many of the affidavits also mention Plaintiff's outrageous and inappropriate response to a policy, introduced at a meeting of Defendant's Management Committee, which proposed a limitation on smoking at company facilities.

Count I of Plaintiff's Complaint alleges that Defendant discriminated against Plaintiff in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA"), when the Defendant terminated Plaintiff because of Plaintiff's age. Count II alleges that Defendant retaliated against the Plaintiff in violation of the ADEA when the Defendant's Senior Vice President allegedly told Plaintiff that Plaintiff would forfeit some of his termination benefits if he complained of age discrimination. Finally, Plaintiff states in Count III that Defendant engaged in a pattern and practice of age discrimination when one of Defendant's officers supposedly announced a plan to remove elderly employees at a meeting in November 1986.[1]

1. Plaintiff provides no support for Count II of his Complaint. A prima facie case of retaliation requires a Plaintiff to show (1) that he engaged in statutorily protected expression; (2) an adverse action by the employer; (3) and a causal link between the protected expression and adverse action. *Johnson v. Sullivan,* 945 F.2d 976, 980 (7th Cir.1991). As Plaintiff does not contest Defendant's assertion that Defendant took no actual adverse action against Plaintiff, Plaintiff cannot establish a prima facie case for retaliation. (Defendant's Local Rule 12(M) Statement at ¶ 100.)

ANALYSIS

Under Rule 56(c), summary judgement shall be granted "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." Fed.R.Civ.P. 56(c). Summary judgement shall be entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The showing made by the non-moving party must be more than merely colorable. Summary judgement is appropriate "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Summary judgement is proper even when issues of motive or intent are involved, if the plaintiff fails to establish any motive or intent which supports his position. *Morgan v. Harris Trust and Savings Bank of Chicago,* 867 F.2d 1023, 1026 (7th Cir.1989). Mere conclusory assertions of discrimination are not sufficient to withstand a motion for summary judgement. *Patterson v. General Motors Corp.,* 631 F.2d 476, 482 (7th Cir.1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981).

Defendant argues that the Court should grant summary judgement in Defendant's favor for two reasons. First, Defendant claims that the ADEA should not apply to a corporation's hiring and firing of its in-house counsel. Second, Defendant asserts that even if the ADEA applies, Defendant has legitimate reasons to substantiate its decision to terminate the Plaintiff and Plaintiff has presented no proof to suggest that he was fired because of his age.

*Application of the ADEA*

In *Rand v. CF Industries, Inc.,* 797 F.Supp. 643 (N.D.Ill.1992), the Court held that the ADEA encompasses a company's treatment of its in-house counsel. Thus, the *Rand* court rejected the defendant-employer's argument that a client's legal right to dismiss his attorney prevails over federal discrimination statutes. *Id.* at 645.

Interpreting the ADEA, the *Rand* court relied on both the plain language and the framework of the statute. *Id.* This Court agrees with the *Rand* court that the ADEA's statutory definitions of "employer" and "employee" are broad and should be interpreted liberally.[2] *Id.* This Court concurs further that the statutory structure of the ADEA suggests that in-house counsel are not excluded from the statute's scope. Certain government officials and certain bona fide executives are excluded from coverage. *See,* 29 U.S.C. §§ 630(f), 631(c)(1). However, no exemption exists for in-house counsel. Thus, the statutory structure undercuts the contention that such an exemption exists. *Id.* at 645.

Finally, the legislative history of the ADEA supports the position that in-house counsel are covered by the statute's protections. The House Report accompanying the "bona fide executive" exemption, § 631(c)(1), states that the exemption extends to "heads of major departments or divisions," such as "finance, marketing, legal, production and manufacturing." 1978 U.S. Code Congressional and Administrative News 504 at 531, H.R.Report. No. 95–950. As the language confines the exemption to heads of major departments, the language implies that members of the corporate legal staff, such as in-house counsel, are covered by the statute.

This Court recognizes that Plaintiff was not a mere member of Defendant's legal staff, but rather Defendant's General Coun-

2. An "employer" is defined as:

... a person [including a corporation] engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year...

29 U.S.C. § 630(b).

An "employee" is defined as:

... an individual employed by an employer ...

29 U.S.C. § 630(f).

sel. However, this Court holds, that since Plaintiff was primarily an attorney doing legal work, and not a high policymaking employee, he does not fall within the "bona fide executive" exemption. *See, Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 726 (2nd Cir.1984).

In *Whittlesey,* the Second Circuit held that the ADEA did protect the employer's chief labor counsel because the chief labor counsel was "primarily an attorney doing legal work, giving legal advice, giving attention to the effect of statutes, regulations and administrative action upon company practices." 742 F.2d at 726. The *Whittlesey* Court noted further that while the chief labor counsel had "some administrative or executive responsibility over the functioning of the small labor law section, his supervisory duties were quite minimal and occupied a very small portion of his time." *Id.* The Second Circuit further affirmed the district court's finding that the chief labor counsel was not exempted from the ADEA as a "high policymaking employee" because the employer "did not encourage or invite its house lawyers to play a dynamic policy-creating role." *Id.*

Analogous to the facts in *Whittlesey,* a description of Plaintiff's duties suggest that he had minimal executive or management responsibility. Plaintiff was responsible for providing legal advice to officers at Spiegel, ensuring Spiegel's compliance with federal and state laws, and for monitoring actual and potential legislative and regulatory developments affecting Spiegel's business. (Defendant's Local Rule 12(M) Statement at ¶ 8.) Moreover, as in *Whittlesey,* the Defendant in the present case clearly opposed any attempt by Plaintiff to deviate from his legal role. Defendant's executives testified that Plaintiff was supposed to focus on the legal, not the business, aspects of various transactions. (Defendant's Local Rule 12(M) Statement at ¶ 38.)

The Defendant cites *Balla v. Gambro, Inc.,* 145 Ill.2d 492, 164 Ill.Dec. 892, 584 N.E.2d 104 (1991), and *Kier v. Commercial Union Ins. Company,* 808 F.2d 1254 (7th Cir.1987), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 528 (1987), in support of its proposition that an employer's in-house counsel is not covered by the protections of the ADEA. This Court finds Defendant's argument unpersuasive.

In *Balla,* the Supreme Court of Illinois held that the company's general counsel did not have a cause of action for retaliatory discharge against his employer. *Id.* 164 Ill. Dec. at 895, 584 N.E.2d at 107. The employer in *Balla* had fired the company's general counsel after the general counsel had vowed to do whatever necessary to stop the sale of adulterated dialyzers. The *Balla* court held that if it granted in-house counsel the right to bring a retaliatory discharge action against his employer, the employer "would be less willing to be forthright and candid with [its] in house counsel," and the rule would have a chilling effect on communications between attorney and client. *Id.* 164 Ill.Dec. at 895, 584 N.E.2d at 107, 110.

*Balla* can be distinguished from the present case in two ways. First, as the *Rand* court noted, *Balla* concerned two competing state court principles: the principle that an employer may discharge an at-will employee for any reason or for no reason at all and the principle that a well functioning attorney client relationship requires uninhibited communication and trust. 797 F.Supp. at 646. In the present case, the Supremacy clause demands that the federally mandated protection of the ADEA triumph over the state principle of at-will employment. U.S. Const. Art. VI, cl. 2.[3]

Second, *Balla* focused on the termination of an in-house counsel who threatened to report his employer's wrongdoing and the impact of a subsequent retaliatory discharge action on the attorney-client relationship.

3. Defendant argues that this Court's Rule 1.16 states that a lawyer may be obligated to withdraw upon being fired. According to Defendant, the commentary to this Rule suggests that Defendant has the right to discharge his attorney at any time with or without cause. Thus, Defendant concludes that a client's untrammeled right to fire his lawyer is also a principle of federal law.

By referring to "this Court's Rule," Defendant seems to imply the Rules of the District Court for the Northern District of Illinois. Rule 1.16 of the Rules of the District Court of the Northern District of Illinois has been reserved.

The present case does not implicate an in-house counsel's whistle-blowing. An in-house counsel's age discrimination action is less likely to have a chilling effect on the attorney-client relationship than a retaliatory discharge action brought after in-house counsel threatened to reveal his employer's wrongdoing. Thus, the Illinois Supreme Court's opinion in *Balla* does not persuade this court to hold that the protections of the ADEA do not apply to an in-house counsel allegedly terminated because of his age.

Defendant asserts that the Seventh Circuit in *Kier v. Commercial Union Insurance Companies,* 808 F.2d 1254 (7th Cir.1987) recognized that the same principles that bar in-house counsel from maintaining a wrongful discharge action apply in an age discrimination suit. Contrary to Defendant's assertion, this Court notes that the *Kier* court expressly declined to address the issue of an in-house counsel's rights under the ADEA because the employer had waived the argument. 808 F.2d at 1257; *Rand,* 797 F.Supp. at 646. The court in *Kier* recognized the clear right of a client to discharge his attorney for any reason or for no reason at all and the long standing principle that the relationship between an attorney and client is based on trust and cannot function unless the client has complete confidence in his or her attorney. 808 F.2d at 1256–1257. However, the *Kier* court's recognition of this long standing principle does not imply that an in-house counsel has no rights under the ADEA. For the reasons stated above, this Court agrees with *Rand* and *Whittlesey* that the Plaintiff is not exempted from the protections of the ADEA as a "bona fide executive" or as a "high policymaking employee."

*Plaintiff's Age Discrimination Claim*

To establish a prima facie case under the ADEA, a plaintiff must show (1) that he belongs to the protected class, (2) that his job performance was sufficient to meet his employer's legitimate expectations, (3) that he was discharged in spite of his performance, and (4) that his employer sought a replacement for him. *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 463 (7th Cir.1986), *cert denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987).

Once the Plaintiff carries his initial burden of establishing a prima facie case of age discrimination, the burden shifts to the employer to articulate a legitimate non discriminatory reason for the discharge. *Id.* at 462, citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 117–25, 105 S.Ct. 613, 620–23, 83 L.Ed.2d 523 (1985) (applying the *McDonnell Douglas* burden shifting framework to age discrimination cases). If the employer carries this burden, then the employee must prove by a preponderance of the evidence that the employer's explanation was mere pretext for discrimination. *Dale,* 797 F.2d at 462. It is not enough for the Plaintiff to show that the Defendant's proffered reason is not worthy of credence. *St. Mary's Honor Center v. Hicks,* — U.S. —, — – —, 113 S.Ct. 2742, 2750–51, 125 L.Ed.2d 407 (1993). The Plaintiff must put forth affirmative evidence that the real explanation for Defendant's action was age discrimination. *Id.* at —, 113 S.Ct. at 2751.

The parties do not dispute that the Plaintiff is over forty and thus falls within the category of individuals protected under the ADEA.[4] However, Defendant claims that Plaintiff cannot establish a prima facie case of age discrimination because Plaintiff has not demonstrated that he was performing his job well enough to meet his employer's legitimate expectations.

Whether the Plaintiff can establish that his job performance satisfied the legitimate expectations of his employer involves a bifurcated inquiry. *Dale,* 797 F.2d at 463. The Court must determine whether the employer's expectations were legitimate and if so, whether the employee was meeting those expectations. *Id.* The inquiry into whether an employer's expectations were legitimate is a limited one which compels the court to determine whether the employer communicated those expectations to the employee and

4. The ADEA protects individuals who are at least forty years of age. 29 U.S.C. § 623(a). The Plaintiff was fifty-six years old when terminated. (Defendant's Local Rule 12(M) Statement at ¶¶ 1 and 91.)

whether those expectations were unreasonable. *Id.*

In his affidavit, Plaintiff states that no one ever told him that he or she had lost confidence in Plaintiff's abilities to act as general counsel and no one ever criticized his performance, ability, or the way he carried out his various tasks. (Paul Stinneford's Affidavit at ¶ 10.)[5] However, at the same time, Plaintiff admits that he received performance reviews in 1980 and 1983 which noted that Plaintiff "comes on authoritatively and tends to present the negatives more vigorously than the positives" and that Plaintiff "exhibits an intractable lack of flexibility when challenged on his legal position." (Defendant's Local Rule 12(M) Statement at ¶¶ 11, 13.)

Additionally, Plaintiff does not contest Defendant's Senior Vice President, Mr. Bochenski's testimony that he instructed Plaintiff to focus on the legal work and not to challenge the merits of Defendant's business decisions. *Id.* at ¶ 38. Plaintiff also admits that Mr. Shea, Defendant's Chairman, told Plaintiff he was being insubordinate and directed Plaintiff to sit down when Plaintiff acted in a disruptive and confrontational manner at a Management Committee meeting. *Id.* at ¶ 56.

From these uncontested facts, this Court concludes that Plaintiff was aware that Defendant expected Plaintiff to act in a non-confrontational and non-disruptive manner when presenting his opinion and that Defendant expected Plaintiff to confine his opinion and advice to the legal issues. This Court holds that such expectations are not unreasonable.

Defendant details a number of instances which illustrate its position that Plaintiff was not meeting Defendant's legitimate expectations. A brief review of such instances follows.

In 1986, John Casey, Defendant's Treasurer, called upon Plaintiff to perform the necessary legal work for a loan transaction, but when Mr. Casey found that Plaintiff was not providing adequate legal support, he requested that outside counsel be retained. *Id.* at ¶¶ 29–33. In his affidavit, Plaintiff states that the Defendant often retained outside counsel for such matters as acquisitions, stock offerings, and major debt refinancing. (Paul Stinneford's Affidavit at ¶ 14.) However, Plaintiff does not contest Mr. Casey's statement that Plaintiff was not providing adequate legal support necessary for the 1986 loan even though Mr. Casey had called upon him to do so.

At a Management Committee meeting in late 1986, Mr. Dahlstrand, Defendant's Vice President of Personnel and the Chairman of the Smoking Policy Committee, presented a proposed smoking policy which would ban smoking throughout Spiegel corporate headquarters. *Id.* at ¶ 44. Plaintiff, who was a member of the Smoking Policy Committee was upset by the policy recommended by Mr. Dahlstrand and consequently lost his temper at the Management Committee meeting yelling at the other members of the committee and pounding the table. *Id.* at ¶¶ 54–55. Angered by Plaintiff's conduct, Mr. Shea told Plaintiff that he was being insubordinate and directed him to sit down and be quiet. *Id.* at ¶ 56.

In early 1987, Kenneth Bochenski requested that Plaintiff be removed from a transaction involving Defendant's purchase of the Cara Corporation, a small privately held computer software services consulting company. *Id.* at ¶¶ 34–41. Mr. Bochenski testifies in his affidavit that instead of performing the necessary legal work associated with the

5. Plaintiff disputes many of the statements in Defendant's Local Rule 12(M) Statements of Undisputed Facts in what purports to be Plaintiff's Local Rule 12(N) statement. However, Plaintiff does not support his disputes with cites to any of the attached affidavits or deposition excerpts.

This Court has upheld the strict application of Rule 12(N). *Valenti v. Qualex, Inc.,* 970 F.2d 363, 368 (7th Cir.1992). Any facts asserted by the movant and not contradicted in the manner specified by the rule are deemed admitted. *Id.* at 369. A Rule 12 responsive statement that is a flat denial, without reference to supporting materials, or with incorrect or improper references, and containing irrelevant additional facts has no standing under Rule 12(N). *Id.*

Consequently, as Plaintiff has failed to support any of his factual statements, the facts in Defendant's Local Rule 12(M) statement must be deemed admitted. However, this Court will consider Plaintiff's own attached affidavit.

purchase, the Plaintiff persisted in advising Mr. Bochenski that the Defendant should not proceed with the acquisition. (Kenneth Bochenski's Affidavit at ¶ 13.) In his Affidavit, the Plaintiff does not deny the testimony of Mr. Bochenski, he merely states that outside's counsel's participation in the Cara transaction was minimal including only the closing and some technicalities involving the closing. (Stinneford's Affidavit at 15.)

The final instance illustrating Defendant's dissatisfaction with Plaintiff's performance involved Spiegel's 1988 acquisition of Honeybee, a publicly traded company. At a negotiation session where the representatives from Honeybee and Spiegel intended to reach an agreement in principle, Plaintiff interrupted various Honeybee representatives and interjected irrelevant issues in an abrasive manner despite cautionary instructions from Mr. Shea. (Defendant's Local Rule 12(M) Statement at ¶ 75–76.) One of the Honeybee representatives criticized Plaintiff as a "deal breaker not a deal maker," and eventually, called the negotiations to a halt. *Id.* at ¶¶ 77–79. While the negotiations between Honeybee and Spiegel stood at a standstill, another bidder entered and drove up the price. *Id.* at ¶ 81. As a result of his conduct, Mr. Shea removed Plaintiff from the Honeybee negotiations. *Id.* at ¶ 82. Once again, Plaintiff does not deny his conduct at these negotiations.

Plaintiff presents minimal evidence to suggest that he was in fact meeting Defendant's legitimate expectations. Plaintiff points to the fact that he remained employed and continued to receive salary increases during the years when Defendant claims there was an increasing lack of confidence in Plaintiff's ability to perform his duties. Unfortunately, the fact that Plaintiff remained employed despite Defendant's increasing dissatisfaction does not suggest that Plaintiff was meeting the legitimate expectations of his employer, but rather, suggests that mounting disappointment with Plaintiff's performance eventually lead to his termination. Moreover, Plaintiff presents no evidence to suggest that his raises were merit based as opposed to a cost of living allowance.

Finally, Plaintiff mentions a performance evaluation dated January 1, 1983 which Plaintiff claims demonstrates Defendant's approval of Plaintiff's operating procedure. The performance evaluation states in part,

> Spiegel has relatively few problems considering the legal environment. Credit must go principally to Paul because of his knowledge and operating procedure that emphasizes prevention. This is a very specialized field with few really qualified experts. Paul is among the best of this group.

(Plaintiff's Denial of Defendant's Claim of Undisputed Material Facts at ¶ 13.) First, this Court notes that the performance evaluation of January 1983 also states,

> On occasion Paul exhibits an intractable lack of flexibility when challenged on his professional position. Happily he is much improved because sometimes the situation involved our parent legal counterparts. Paul is a valuable person to have around.

*Id.* Second, this Court concludes that, even if the performance evaluation does suggest that Plaintiff was meeting some of Defendant's legitimate expectations in 1983, the performance evaluation does not suggest that Plaintiff was meeting Defendant's legitimate performance expectations when terminated in 1988, especially in light of the confrontational events detailed above.

As Plaintiff has not presented any evidence suggesting that he was meeting Defendant's legitimate expectations, he has not established a prima facie case for age discrimination.

■ This Court holds further that even if Plaintiff had established a prima facie case of age discrimination, he has not shown that Defendant's reason for termination was pretextual. Plaintiff presents at least four arguments in support of his assertion that his termination was motivated not by his confrontational and insubordinate behavior, but rather by his age.

First, Plaintiff argues that the speech Mr. Shea presented to the Board of Directors at a November 1986 meeting demonstrates that the Defendant sought to terminate older employees because of their age. The November 1986 speech states in part,

> The average age of our senior management is old, whether compared to European standards or to present American merchandising organizations. The majority of our senior management will most likely retire or face retirement age within the next five years. We must immediately begin to bring into Spiegel a transfusion of new, younger, aggressive management, willing to take risks so that we will be equipped to deal with the departures of our senior management, as well as many of our current middle management executives who have been with us in most cases between 24 and 40 years. If we fail to properly evaluate our future needs in this area, we will not be in a position to capitalize on the marketing opportunity available to us, let alone achieve our 5–year plan.

(Plaintiff's Response at 7.) Contrary to Plaintiff's assertions, this Court holds that Mr. Shea's speech does not demonstrate an intent to wrongfully terminate older employees. Rather, the speech suggests that the Defendant must begin to train younger managers so that Defendant will be properly equipped to face the future when the majority of its senior management retires.

Second, Plaintiff asserts that seven of the nine officers employed by Defendant at the time of November 1986 speech who were over the age of fifty-five "had terminated by the time of Plaintiff's discharge." (Plaintiff's Response at 7.) Initially, the Court notes that the Plaintiff cites no support for his assertion. Moreover, Plaintiff's ambiguous language does not indicate whether these seven officers left voluntarily or whether Defendant fired them. Thus, Plaintiff's second assertion does not suggest an intent to wrongfully terminate older employees because of their age.

Plaintiff's third assertion that younger officers earned higher salaries than older officers is irrelevant as Plaintiff's claim involves discriminatory termination, not discriminatory wages. Finally, Plaintiff asserts that the reasons for termination allegedly memorialized in a memorandum dated March 10, 1988 are not credible. Such an assertion is insufficient to meet the burden of establishing pretext as articulated by the Supreme Court in *St. Mary's Honor Center v. Hicks*, — U.S. —, ———, 113 S.Ct. 2742, 2750–51, 125 L.Ed.2d 407 (1993). Plaintiff cannot meet his burden of demonstrating that the Defendant's explanation for termination is pretextual simply by claiming that Defendant's explanation is not worthy of credence. *Id.* Plaintiff must show that age discrimination was a motivating force behind the Defendant's actions. *Id.* As Plaintiff has not met his burden, this Court holds that the Defendant is entitled to summary judgement.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgement is granted.